**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:21-CV-00056-HBB**

**NORRIS J.**[1]                                                                     **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**[2]                      **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Norris J. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   The Plaintiff filed a Motion for Summary Judgment and a Fact and Law Summary (DN 19, 20).   The Defendant filed a Fact and Law Summary (DN 26).   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED.**

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15).   By Order entered October

---

1  Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit.

20, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

<u>FINDINGS OF FACT</u>

On July 19, 2019, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 16, 243-244, 245-252, 253-259).   Plaintiff alleged that he became disabled on June 1, 2017, as a result of arthritis in back, right hip hurts, degenerative disc disease, depression, anxiety, and PTSD (Tr. 16, 93-94, 105-106, 121-122, 271-272).   The application was denied initially on September 3, 2019, and upon reconsideration on December 16, 2019 (Tr. 16, 117, 151).[3]   On December 26, 2019, Plaintiff filed a written request for a hearing (Tr. 16, 199).

On July 2, 2020, Administrative Law Judge Lisa R. Hall ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances of the COVID-19 pandemic (Tr. 16, 53-74). Plaintiff was present on the line with his non-attorney representative, Kirsten Brown (Tr. 16, 55). Robert L. Bond, an impartial vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated August 18, 2020, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-28).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 15, 2019, the amended alleged onset date (Tr. 16, 19).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, arthritis, anxiety,

---

3 The ALJ indicates the application was denied upon reconsideration on September 04, 2019 (Tr. 16).   As the Disability Determination and Transmittal form indicates September 03, 2019 (Tr. 117), the undersigned has used that date.

depression, and borderline intellectual functioning (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except he should never climb ladders; he can occasionally perform other postural activities; he should avoid concentrated exposure to vibration; he can perform simple, routine, repetitive work tasks; he could occasionally interact with others, including coworkers, supervisors, and the general public; and he could perform tasks involving little or no independent judgment and minimal variation (Tr. 22). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 26).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 26-27).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 15, 2019, through the date of the decision (Tr 27).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 240-242).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton

v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

1. **Arguments of the Parties**

First, Plaintiff asserts the ALJ erred by starting her RFC analysis with Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), claiming that the ALJ improperly bound herself to the RFC finding in the prior ALJ's decision as the period of disability in question was from May 15, 2019 to August 18, 2020, therefore, making the prior ALJ decision nonbinding following Earley v. Commissioner of Social Security, 893 F.3d 929 (6th Cir. 2018).   Plaintiff claims that the ALJ's deference to the former ALJ's RFC findings caused the ALJ to not properly account for Plaintiff's severe borderline intellectual functioning impairment (DN 20-1, pp. 8). Plaintiff also argues the ALJ's RFC determination is not supported by substantial evidence for the following reasons: (1) the ALJ improperly evaluated the RFC because she failed to give a fresh look to APRN Dwyer and CSW Meeks's medical opinions to find them sufficiently persuasive, pointing to the ALJ's lack of acknowledgement of Plaintiff's abnormal mental status exams, and because the State Agency failed to reference a October 2019 psychological evaluation (DN 29, pp. 3); (2) the ALJ did not properly account for Plaintiff's use of a cane in determining the RFC, and the ALJ applied her own lay opinion to Plaintiff's need to use a cane; and (3) the ALJ's credibility assessment is defective for the aforementioned reasons and because the ALJ did not consider Plaintiff's prior work history.

In response, Defendant asserts the ALJ correctly followed Earley, as the ALJ considered the prior evidence, the prior ALJ decision, and the later submitted evidence with an adequate fresh look (DN 26, pp. 7).   To Plaintiff's subsequent arguments, Defendant counters (1) that under the recent regulations, the ALJ is only required to articulate consideration of all medical opinions, but there is no controlling weight analysis in analyzing the different opinions (DN 26, pp. 9); (2) that

the ALJ was not obligated to consider Plaintiff's cane use because it is not medically necessary as there is no consistent reference to the cane in the record (DN 26, pp.14); and (3) that the ALJ did not make any negative inferences to Plaintiff's work history and that a claimant "is not entitled to a presumption of credibility based solely on his long work history" (DN 26, pp. 19).   Jones v. Apfel, 234 F.3d 1273 (Table), 2000 WL 1648137 (7th Cir. 2000).

**2.  Discussion**

*A.  Earley Standard*

The Court will first address Plaintiff's contention that the ALJ erred by relying on Drummond.  In Drummond, the Sixth Circuit held that a subsequent ALJ is bound by the RFC findings in the prior ALJ's decision when the claimant files a new application for benefits addressing the unadjudicated period of time that proximately follows the adjudicated period of time, unless the claimant provides new and additional evidence that shows changed circumstances. 126 F.3d at 841-42.  More recently, the Sixth Circuit clarified Drummond's holding in Earley. In Earley, the plaintiff filed a subsequent application for a new period of disability after her initial application was denied.  893 F.3d at 930-31.  The court stated the ALJ was not bound by the principles of *res judicata*, claiming that Drummond does "not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." Id. at 931.  However, this independent "[f]resh review is not blind review" and a subsequent ALJ can still consider the rulings of the previous ALJ.   Id. at 934.

Plaintiff is correct that his claim is entitled to independent review because his subsequent application is a separate period of disability from his prior application.   Plaintiff's first application

7

was for the period between May 1, 2017 to May 14, 2019, while the current application period was May 15, 2019 to August 18, 2020 (DN 20-1, pp. 4-6).   However, the undersigned finds that the ALJ did provide Plaintiff's application a fresh look.

The <u>Earley</u> court's aim was to emphasize "fairness to the applicant."   <u>Maynard v. Comm'r of Soc. Sec.</u>, No. 2:18-CV-959, 2019 U.S. Dist. LEXIS 124239, *17 (S.D. Ohio July 25, 2019). Fairness to the applicant is violated if the ALJ mistakenly assumes they are bound by a prior ALJ's decision, as it creates "an unwarranted procedural burden."   <u>Ferrell v. Berryhill</u>, No. 1:16-CV-00050, 2019 U.S. Dist. LEXIS 79390, at *15 (E.D. Tenn. May 10, 2019).   In <u>Maynard</u>, the court stated fresh look review can occur when the ALJ's reliance on <u>Drummond</u> does not prevent "the ALJ from considering *all* the relevant evidence."   2019 U.S. Dist. LEXIS 124239 at *18. Following this approach, the court ruled the ALJ failed to give the applicant a fresh look because she stated the presumption that she was bound to the earlier decision and only considered new medical opinion evidence to the extent they were consistent with the earlier decision.   <u>Id</u>. at *19-20.   Similarly, in <u>Hogren v. Commissioner of Social Security</u>, No. 2:19-CV-854, 2020 U.S. Dist. LEXIS 28937, at *10 (S.D. Ohio Feb. 20, 2020), the court remanded the case because the ALJ "explicitly concluded" the prior decision was binding.

Other courts have found that an ALJ gave a fresh look despite referencing <u>Drummond</u> deference.   <u>Williamson v. Kijakazi</u>, No. 3:21-CV-00227-DJH-RSE, 2022 U.S. Dist. LEXIS 102389, at *9 (W.D. Ky. May 18, 2022).   In <u>Williamson</u>, even though the ALJ "explained he must defer to the ALJ's previous findings" under <u>Drummond</u>, the court stated fresh look review was satisfied because the ALJ discussed the new relevant evidence.   <u>Id.</u> at *9-11; *See* <u>Goins v. Saul</u>, No. 19-117-DLB, 2020 U.S. Dist. LEXIS 46910, at *13 (E.D. Ky. Mar. 18, 2020) ("even when an

ALJ uses language 'suggesting that he was required to adopt the prior RFC,' and ALJ may be found to have given the evidence a fresh look, as required under Earley." (citations omitted)).

Though the ALJ referenced Drummond and does not mention Earley in her decision, this did not create an unfair procedural burden to Plaintiff. Nowhere in the decision does the ALJ claim they are bound to the prior ALJ's decision. Instead, the ALJ stated "[i]n accordance with Drummond … the undersigned has examined the previously adjudicated residual capacity" (Tr. 23). Clearly, the ALJ's approach is dissimilar to both Maynard and Hogren, as the ALJ did not explicitly start her analysis with a declaration of being bound under Drummond. As seen with Williamson and Goins, the mere mention of deference under Drummond will not violate fresh look review.

Further, following Maynard's reasoning, Drummond did not prevent the ALJ from considering all the relevant evidence, as seen with "[a]fter reviewing both the previous decision and the current evidence of record," and "[a]fter careful consideration of the entire record" (Tr. 22, 23). 2019 U.S. Dist. LEXIS 124239 at *18. Throughout the decision, the ALJ referenced and considered relevant evidence for the new application period, which is seen through the detailed discussion of Plaintiff's medical evidence: his primary care office visit in July 2019, an evaluation from a physical therapist in August 2019, the Plaintiff's physical therapist's completed RFC assessment in August 2019, the September 2019 MRI, a pain management office visit in January 2020, the medical source statement by APRN Dwyer in February 2020 and by Plaintiff's therapist CSW Meeks in May 2020, a primary care office visit in May 2020, mental status exams in March and April of 2020, a psychologist evaluation in October 2020, Plaintiff's prescription for a cane, an office visit with a nurse practitioner, and the State Agency medical consultants adoption of the

RFC from the prior ALJ's decision (Tr. 19-26).   Drummond did not prevent the ALJ from considering all the relevant evidence, including Plaintiff's severe borderline intellectual functioning impairment.   Maynard, 2019 U.S. Dist. LEXIS 124239 at *18.   For the above reasons, Plaintiff is not entitled to relief on this claim.

  B.  *Substantial Evidence*

     Plaintiff's remaining arguments question whether the Commissioner's decision, as reflected in the decision of the ALJ, is supported by substantial evidence.   42 U.S.C. § 405(g); Smith v. Sec'y of Health and Human Servs., 893 F.2d 106, 108 (6th Cir. 1989) (citing Mullen v. Sec'y of Health & Human Servs., 800 F.2d 535 (6th Cir. 1986).   If the decision is supported by substantial evidence the Court cannot inquire whether the record could support a decision the other way.   Smith, 893 F.2d at 108 (citing Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n. 4 (6th Cir. 1986)).   Substantial evidence is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion.   Smith, 893 F.2d at 108 (citing Richardson v. Perales, 402 U.S. 389 (1971)).

  i.   Medical Opinions

     Plaintiff contends that the ALJ improperly evaluated the medical opinions of CSW Meeks and APRN Dwyer both as an insufficient "fresh look" under Earley, by not acknowledging abnormal mental status exams, and claims that the medical opinions are at least persuasive as the State Agency administrative findings and, therefore, required the ALJ to consider the most persuasive factor to break the tie among the medical opinions (DN 20-1, pp. 10).   As previously discussed, the ALJ did give Plaintiff's application a fresh look under Earley, so the undersigned will only address Plaintiff's argument regarding the persuasiveness of the medical opinions. The

10

ALJ did not find CSW Meeks or APRN Dwyer's opinions fully persuasive.   First, Plaintiff claims that the State Agency did not review or reference a psychological evaluation from October 2019, making the prior ALJ's decision and State Agency's adoption of the prior ALJ's decision less persuasive than both CSW Meeks and APRN Dwyer's opinions (DN 20-1, pp. 14-16).   However, this evaluation was considered by the ALJ when determining the Plaintiff's RFC (Tr. 20), and the ALJ used the psychological evaluation to explain there was no marked limitation in Plaintiff's ability to adapt or manage oneself (Tr. 24).

Plaintiff argues the ALJ's lack of discussion regarding the portion of CSW Meeks' opinion that the ALJ found to be unpersuasive "prevents meaningful judicial review" (DN 20-1, pp. 15-16).   Plaintiff also argues in regard to APRN Dwyer's opinion that the ALJ's lack of references to the record is not a sufficient explanation of the supportability and consistency of the medical opinion (DN 20-1, pp. 16-17).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because he filed his application after March 27, 2017 (Tr. 16).   *See* 20 C.F.R. §§ 404.1520c, 416.920c.   The new regulations explicitly state "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20

11

C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).   Of these five factors, the two most important

are supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).

Further, the regulation requires Administrative Law Judges to explain how they considered the

supportability and consistency factors in determining the persuasiveness of the medical source's

opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations

Administrative Law Judges "may, but are not required to, explain how" they considered the three

other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).

An Administrative Law Judge will articulate how she considered the other factors in

paragraphs (c)(3) through (c)(5) of the regulation when the Administrative Law Judge finds that

two or more medical opinions about the same issue are both equally well supported and consistent

with the record but are not exactly the same.   20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ's assessment of both medical opinions comport with the applicable regulations

because the ALJ explained how she considered the supportability and consistency of both medical

opinions to show her decision is supported by substantial evidence as required under 20 C.F.R. §

404.1520c (Tr. 25).   To CSW Meeks's medical opinion, the ALJ found only the portion of the

opinion regarding Plaintiff's work ability to be persuasive as it was supported and consistent with

the record, while she found the portion regarding Plaintiff's social functioning not persuasive (Tr.

25).   The ALJ's analysis complies with the regulations because the ALJ stated her reasoning why

she found only part of the medical opinion to be persuasive:

> This opinion is partially persuasive because his inability to perform
> complex work is supported by and consistent with his psychological

12

> testing and other stressors suggesting that he is limited to simple,
> routine work.   However, her opinion regarding his social
> functioning is less persuasive, as he testified that he sometimes
> grocery shops and goes out to eat with his friend.   Therefore, a
> marked limitation is not supported by the evidence.   (Exhibit
> B15F).

(Tr. 25).   Contrary to Plaintiff's assertion, the ALJ's explanation did not prevent meaningful

judicial review (DN. 20-1, 15-16).

The ALJ found that APRN Dwyer's opinion that Plaintiff is unable to maintain regular

attendance at a job was unpersuasive because:

> although his treatment records do show increased stressors
> involving interpersonal relationships, health issues, and finances,
> they do not suggest that he would be totally unable to work with
> others or complete a normal workweek.   As detailed previously, the
> overall record supports no more than moderate limitations and
> suggests that he is limited to simple, routine work tasks with no more
> than occasional interaction with others. (Exhibit B10F).

(Tr. 25).   Further, earlier in the determination of the RFC, the ALJ's explained the evidence in the

record that constitutes as substantial evidence to support the RFC finding, such as:

> He says that a friend lives with him, who helps him perform most
> household chores, such as laundry, cooking, shopping, and cleaning.
> He reports that in the morning, he will brush his teeth, make coffee,
> and then usually watch television in bed.   He says he sometimes
> walks around the yard with his friend, as well as grocery shopping
> and going out to eat with her.   He additionally alleges symptoms of
> depression and problems concentrating.   He states that he needs
> daily redirection from his friend and is prescribed medication for his
> mental health conditions.   (Hearing testimony).

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could

13

> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the reasons
> explained in this decision.

(Tr. 22-23).    Additionally, the ALJ discussed in detail: evidence of Plaintiff's primary care exam,

which showed "he was pleasant and cooperative and appeared to have good grooming and hygiene

habits.    It also showed a normal attention span and fair memory," (Tr. 24); evidence that Plaintiff

was independent in basic activities (Tr. 24); testing which revealed Plaintiff "showed moderate

symptoms of depression and mild symptoms of anxiety," which could impact his interpersonal

function[;]" that he was diagnosed with a persistent depressive disorder, panic disorder, and

diagnosed with borderline intellectual functioning (Tr. 24).

The ALJ satisfied the requirements of 20 C.F.R. § 404.1520c, as she used her previously

developed record to conclude the persuasiveness of the medical opinions.    The ALJ fully

considered both CSW Meeks and APRN Dwyer's opinions and their implications and found

neither of them to be well supported nor consistent with the record.    Crum v. Comm'r of Soc. Sec.,

660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these

treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with

this record.    But it suffices that she listed them elsewhere in her opinion.")

ii.    Cane Prescription

Plaintiff argues that the ALJ improperly dismissed Plaintiff's cane prescription in

determining his RFC.    Plaintiff argues that his use of a cane is supported by the record, but instead

of relying on the record, the ALJ advanced her own lay opinion when determining the RFC (DN

14

20-1, pp. 19-20).   Further, Plaintiff contends that ALJ should have contacted the treating physicians for more information regarding Plaintiff's prescription if the ALJ had questions regarding its necessity.   Defendant counters that the record does not contain a consistent reference to Plaintiff's need for the cane, the ALJ did not advance her own medical opinion, the use of a cane is not incompatible with light work, and the ALJ was not required to recontact medical sources because there was sufficient information in the record (DN 26, pp. 14-15).

First, the undersigned finds the record did not support Plaintiff's need for the cane to warrant a remand to determine a new RFC.   Under SSR 96-9p, to be deemed medically necessary, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."   SSR 96-9p, 1996 WL 274185 at*7.

For a cane to be considered medically necessary there needs to be sufficient reference to it in the record to show that its necessity is more than the plaintiff's subjective desire.   In <u>Golden v. Berryhill</u>, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), <u>R. & R. adopted sub nom.</u> <u>Golden v. Comm'r of Soc. Sec.</u>, No. 1:18CV636, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019), the plaintiff challenged the RFC because the ALJ did not provide a limitation for a cane in the assessment.   Though the plaintiff was prescribed a cane and his treatment records indicated his use of a cane, the court found the medical documentation did not establish the circumstances the cane was needed and the "record indicate[d] there also were many instances in which a cane was not noted," such as a report that the plaintiff had normal gait, normal spinal range of motion and motor strength.   <u>Id.</u> at 19.   Additionally, "the mere notation by a physician

15

that a claimant should use a cane is not evidence of medical necessity." Halama v. Comm'r of Soc. Sec., 2013 WL 4784966, *8 (N.D. Ohio Sept. 5, 2013). Courts have upheld an ALJ's decision that did not provide a limitation for a prescribed cane when the record does not describe the specific circumstances for which a cane is needed. See Krieger v. Comm'r of Soc. Sec., 2019 WL 1146356 at * 6 (S.D. Ohio March 13, 2019). To sufficiently establish the circumstances for which a cane is needed, the record should contain a description of whether the plaintiff needs to use the cane "all the time periodically, or only in certain situations; distance and terrain and any other relevant information." Stupka v. Saul, No. 1:19-CV-2305, 2021 WL 508298, at *3 (N.D. Ohio Feb. 11, 2021). See Sonya H. v. Comm'r of Soc. Sec., No. 1:20-CV-625, 2022 WL 952196, at *3-4 (S.D. Ohio Mar. 30, 2022).

Here, substantial evidence supports the ALJ's decision that the record did not reflect the necessary details to find Plaintiff's use of a cane medically necessary under SSR 96-9p. The record includes the prescription for the cane, but the record fails to establish the circumstances for which the cane is needed (Tr. 1153). Similar to Golden, here the record reflects many instances where the cane was not noted, such as medical evidence that shows Plaintiff had a normal gait, a normal range of motion, and that his movements did not correlate with his pain rating (Tr. 504, 529, 528, 529, 713, 930, 962, 989, 1157). The record also shows Plaintiffs' back pain was inconsistent and he found relief through over-the-counter remedies (Tr. 528, 713, 932). The cane prescription does not contain any details regarding the cane's usage (Tr. 1153). The only details about the circumstances where the cane is required are provided by Plaintiff in his function report is that he needs to use the cane "when walking for long period[s] of time" and his hearing testimony that he uses the cane all the time (Tr. 60-61, 286). However, the undersigned finds these brief

16

references are insufficient to meet SSR 96-9p's requirements to establish the specific circumstances the cane is needed.  Krieger, 2019 WL 1146356 at *6.  Further, like in Golden, no medical professional provided any explanations or descriptions for Plaintiff's use of the cane. 2018 WL 7079506, at *19.  When contrasted with the medical record, Plaintiff's statements do not overcome the disparity of the lack of references to the cane to show it is medically necessary. The ALJ's decision to not include a limitation for the cane is supported by substantial evidence.

Next, Plaintiff contends the ALJ erred by mischaracterizing the medical record and advanced her own lay opinion.  A mischaracterization can occur when the ALJ does not "accurately state the evidence used to support his finding."  White v. Comm'r of Soc. Sec., 312 Fed. Appx. 779, 787-88 (6th Cir. 2009).  Plaintiff argues the ALJ mischaracterized MRI evidence that there was mild to moderate facet hypertrophy by finding that the MRI findings revealed no more than mild findings and evidence that revealed positive lumbar facet loading bilaterally (DN 20-1, pp. 21).  However, this argument fails because the ALJ's decision regarding the cane is supported by substantial evidence.  First, there is only one reference of mild to moderate facet hypertrophy, and in the same report Dr. Gabbard stated there was "[m]ild degenerative disc disease at L4-5 and L5-S1" (Tr. 710-711).  Therefore, there is substantial evidence that the ALJ did not mischaracterize the evidence by restating Dr. Gabbard's finding in her decision (Tr. 23).  Despite the ALJ's lack of discussion regarding positive lumbar facet loading bilaterally, the decision is supported by substantial evidence.  This is seen with the ALJ's discussion regarding the objective medical evidence from the MRI, the evaluation from the physical therapist, and the pain management office visit that support the ALJ's conclusion that the RFC did not need to contain a limitation for Plaintiff's cane use (Tr. 23).

17

"[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." Clifford v. Aphel, 227 F.3d 836, 870 (7th Cir. 2000); Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996) ("And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. Feb. 15, 2001) (ALJ gave into the temptation to play doctor when made functional findings based on his own interpretation of the treating physician's findings). If the ALJ "considered the medical evidence, adopted the medical opinions that were consistent with the record as a whole, and crafted plaintiff's RFC based on his analysis," the ALJ "is far from 'playing doctor.'" Webster v. Colvin, 3:14-CV-253-TAV-CCS, 2015 WL 4921633, at *14 (E.D. Tenn. Aug. 18, 2015). Here, the ALJ did not question the basis for the cane prescription or promote her own lay opinion as Plaintiff contends. The ALJ considered the medical evidence and adopted the medical opinions that were consistent with the record as a whole (Tr. 24). The ALJ adopted the State Agency medical consultants' finding which affirmed the prior ALJ's RFC (Tr. 25-26). Additionally, the reviewing State Agency noted that "[t]he use/need of a cane is not supported" (Tr. 144). Lastly, the ALJ was not required to recontact any of the medical professionals because there was sufficient evidence in the record for the ALJ to make her conclusion. Kees v. Comm'r of Soc. Sec., No. 3:16-CV-488-DJH-DW, 2018 WL 1411021 at *4 (W.D. Ky. Mar. 20, 2018).

There is substantial evidence to support the ALJ's finding that there were no significant objective abnormalities that would support a limitation in the RFC for the cane.

iii.     Subjective Symptom Evaluation

As to Plaintiff's final argument that the ALJ should have considered Plaintiff's work history, the undersigned finds the ALJ appropriately considered other information and factors which are relevant to determining Plaintiff's RFC.   *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   Infantado v. Astrue, 263 Fed. Appx. 469, 475 (6th Cir. 2008) ("The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor.").   For example, the ALJ considered Plaintiff's medical history, including an X-ray from a primary care visit in July 2019; a functional capacity evaluation by a physical therapist in August 2019; a lumbar MRI in September 2019; a pain management office visit in January 2020; Plaintiff's comments that "he derives benefit from over the counter pain medication and a heating pad"; an exam in February that showed he had normal coordination and gait; a primary care visit in May 2020 that showed a decreased range of motion in the right hip and lumbar back and a decreased strength in the right hip; Plaintiff's daily activities; his social activities with his family and friends; plaintiff's subjective complaints regarding his pain; and the record's lack of evidence of any surgery, surgery referral, or injections for his back and his hip pain (Tr. 22-24).   Taylor v. Saul, No. 2:19-CV-203-DCP, 2021 WL 1181179, at *12 (E.D. Tenn. Mar. 29, 2021) ("While perhaps it would have been advisable for the ALJ to specifically mention Plaintiff's significant work history, any error by the ALJ in failing to explicitly weigh her work history in the credibility determination is at best harmless error.").   The ALJ's finding as to Plaintiff's subjective symptoms is supported by substantial evidence.   For the above reasons, Plaintiff is not entitled to relief on his challenges to the ALJ's RFC determination.

Plaintiff filed a Reply Brief where he contends Defendant waived "key factual and legal premises" by failing to reference certain facts and Plaintiff's own legal assertions in Defendant's Fact and Law Summary (DN 29, pp. 2).   As the above analysis shows, the undersigned disagrees and finds that the Defendant did not waive any of the above contentions.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   Id.   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

H. Brent Brennenstuhl
**United States Magistrate Judge**

September 30, 2022

Copies:        Counsel